IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HARRY D. MARTIN, | ) | |
|     Plaintiff | ) | |
| | ) | 12-162 |
|       v. | ) | C.A. NO. _____ ERIE |
| | ) | |
| SNAP-TITE, INC.; JOHN S. CLARK; | ) | |
| GEORGE P. CLARK; and GARY L. CLARK, | ) | |
|     Defendants | ) | ELECTRONICALLY FILED |

## COMPLAINT

Plaintiff HARRY D. MARTIN, by his attorneys, MacDonald, Illig, Jones & Britton LLP,
files this Complaint against defendants Snap-tite, Inc., John S. Clark, George P. Clark and
Gary L. Clark and states the following as the basis for his claims:

### A.  The Parties

1.      Plaintiff Harry D. Martin is an adult individual residing at 1500 Ocean Drive,
#1008, Miami Beach, Florida 33139.  Mr. Martin is a citizen of the state of Florida.

2.      Defendant Snap-tite, Inc. ("Snap-tite") is a corporation formed under the laws of
the Commonwealth of Pennsylvania with a principal place of business at 8325 Hessinger Drive,
Erie, Pennsylvania 16509.

3.      Defendant John S. Clark is an adult individual residing at 1331 Lee Road,
Waterford, Pennsylvania 16441.  Mr. Clark is a citizen of the Commonwealth of Pennsylvania.

4.      Defendant George P. ("Rick") Clark is an adult individual residing at 10902 Greenlee Road, Waterford, Pennsylvania 16441.  Mr. Clark is a citizen of the Commonwealth of Pennsylvania.

5.      Defendant Gary L. Clark is an adult individual residing at 6053 Volkman Road, Erie, Pennsylvania 16506.  Mr. Clark is a citizen of the Commonwealth of Pennsylvania.

## B.  Jurisdiction

6.      This Honorable Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(a)(1) because plaintiff Martin and the defendants are citizens of different states, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

7.      This Honorable Court has personal jurisdiction over each individual defendant because they reside in Erie County, Pennsylvania.

8.      This Honorable Court has personal jurisdiction over defendant Snap-tite because Snap-tite is incorporated under the laws of the Commonwealth of Pennsylvania and it has a principal place of business in Erie County, Pennsylvania.

## C.  Venue

9.      Venue is proper in the Western District of Pennsylvania pursuant to 28 U.S.C. § 1391(b) because the defendants each "reside" in the Western District of Pennsylvania and the

events or omissions giving rise to this civil action occurred in the Western District of Pennsylvania.

### D.  Background Facts

10.     Plaintiff Harry Martin is a 1957 graduate of Harvard Law School, *cum laude*, and was licensed to practice law in the Commonwealth of Pennsylvania for 47 years until retiring in 2005.

11.     During his years of his professional practice, Mr. Martin developed expertise in the fields of corporate law, business law, mergers and acquisitions, tax, commercial real estate and other specialties essential to providing comprehensive advice and services to corporations, partnerships, sole proprietors and other business organizations.

12.     Since retiring from the practice of law in 2005, Mr. Martin has used his years of experience and expertise to provide management consulting services to various clients, including defendant Snap-tite.

13.     Defendant Snap-tite was incorporated in or before 1940.  It was founded by the late Malcolm Clark, and then for many years managed by Malcolm's son, the late George Clark, and then since approximately 2002 by his sons, John Clark, Rick Clark and Gary Clark.

14.     At all times relevant to this cause of action, Defendants, John Clark, Rick Clark, Gary Clark and their sister, Colleen Clark McKinney ("Controlling Shareholders"), collectively held approximately 90% of all outstanding shares of Snap-tite, occupied the majority of the seats of the Board of Directors of Snap-tite, held the primary officer positions of Snap-Tite and controlled the day-to-day operations of Snap-tite.

15.     In April, 2012 Parker Hannifin Corporation acquired Snap-tite by purchasing all of the outstanding shares of the company pursuant to a Stock Purchase Agreement dated March 16, 2012.

16.     The sale of Snap-tite realized a significant sum for its shareholders, approximately 90% of which was paid to the Controlling Shareholders.[1]

17.     From approximately 1965 to 2005, Plaintiff Martin provided legal and management consulting services to Snap-tite.   From 2005 to the time of sale in April 2012, Martin provided management consulting services to Snap-tite.

18.     Mr. Martin was a member of Snap-tite's Board of Directors from 1965 to April 2, 2012.

19.     On April 2, 2012 Mr. Martin resigned as a Director of Snap-tite to facilitate the sale of the business to Parker Hannifin Corporation.

20.     When asked to resign, Mr. Martin advised Snap-tite that he had an outstanding claim for unpaid consulting fees, as described herein.

21.     At the urging of John Clark, Rick Clark and Gary Clark, Mr. Martin agreed to release Snap-tite's new owner, Parker Hannifin Corporation, from any liability to Mr. Martin, in return for which those three individuals agreed to be personally liable for any fees or other compensation that Snap-tite was obligated to pay Mr. Martin for his management consulting services.  See Letter-Agreement dated March 31, 2012 attached hereto as Exhibit A.

---

[1]     The total amount Parker Hannifin paid for the capital stock of Snap-tite, and the amount realized per share by the Controlling Shareholders, are known to the plaintiff and are relevant to his claims.  Plaintiff specifically reserves the right to disclose these amounts as necessary in the course of this litigation, but plaintiff has refrained from setting forth these amounts in this public document to allow the defendants or other parties to the transaction to take steps they may deem necessary to seal the record or otherwise keep the amounts confidential.

**E.  Services Provided to Snap-tite by Plaintiff Martin, and Benefits
Received by Snap-tite from Plaintiff Martin's Services**

22.    From 1965 to 2012, Mr. Martin was intimately involved in the management and operations of Snap-tite.  He was a close confidant of both Malcolm Clark and George Clark, was consulted on key decisions made over those 47 years, and personally handled many of the most complex and important matters faced by Snap-tite.  Mr. Martin's services were instrumental in the tremendous growth of Snap-tite from 1965 to its sale in 2012.

23.    From 1961 to 2005, Mr. Martin was a partner with the law firm of Elderkin, Martin, Kelly & Messina, P.C. ("Elderkin Firm") and its predecessors, in Erie, Pennsylvania. Thus, until 2005 the Elderkin Firm would bill Snap-tite for the legal services provided by Mr. Martin.

24.    From 1965 to 2012, Mr. Martin also served on Snap-tite's Board of Directors. Until 2009, Mr. Martin's sole compensation for serving as a Director was $500 per Board Meeting, which meetings usually occurred three to four times a year. From 2009 to 2012, Mr. Martin's compensation for services as an outside Director was $2,666 per month.

25.    After Mr. Martin retired from the practice of law in 2005, he continued to provide management consulting services to Snap-tite.

26.    Throughout his years of service to Snap-tite, both during his years of law practice and then his years as a management consultant, Mr. Martin and the defendants had a billing arrangement where Mr. Martin would be compensated at a rate established by Mr. Martin in the exercise of his reasonable, professional judgment considering many factors, including, but not limited to, time spent working on Snap-tite matters during the billing period, complexity of the

subject matter(s) handled during that period, the expertise required to properly handle the matter(s), the amount of money involved, the importance of the matter(s) to Snap-tite and the results obtained.

27.     From 2005 to November of 2008, Snap-tite paid Mr. Martin an average of $107,625 annually for his consulting services.  However, such compensation did not equal the full value of the services provided because Mr. Martin's work ultimately led to a great increase in the value of the company, realized upon the 2012 sale of the company, for which the parties knew or should have known Mr. Martin would be further compensated after the sale.

28.     Mr. Martin's management consulting services continued from December, 2008 throughout 2009, 2010 and 2011, but he did not invoice Snap-tite for that time period because of the economic environment and because his services were devoted primarily to helping prepare the company for sale and he understood that he would be compensated for those services when a sale was consummated.

29.     The following are among the services provided by Mr. Martin to Snap-tite for the period from December, 2008 to April, 2012, for which he has never been compensated:

    a.     Advising Snap-tite about ways to maximize the value of the company, so the Controlling Shareholders could achieve the highest sale price possible. This advice included the financial, management, structural and operational aspects of the company;

    b.     Negotiations, tax advice, and document preparation for the sale of a Snap-tite subsidiary, Snap-tite Hose, Inc.;

    c.     Negotiations, tax advice, document preparation and retention of legal services for the potential sale of Snap-tite's assets to United Technologies;

    d.     Identification of other potential buyers after the unsuccessful negotiations with United Technologies;

    e.     Negotiations, tax advice, document preparation and retention of legal services for the potential sale of stock to Parker Hannifin; and,

f.     Providing extensive advice, support and direction to counsel retained by the defendants to negotiate and complete the Stock Purchase Agreement with Parker Hannifin.   Mr. Martin's work undoubtedly allowed the Controlling Shareholders to obtain a greater sale price than they would have achieved without his services.

30.     During the time period December 2008 through March 2012, Snap-tite knew or had reason to know that Mr. Martin was providing essential and valuable management consulting services for their benefit, for which he expected payment pursuant to the longstanding arrangement between the parties.

31.     Due in large part to Mr. Martin's consulting services, Snap-tite and its Controlling Shareholders profited greatly when Snap-tite was sold to Parker Hannifin.

32.     During the course of preparing Snap-tite for sale and performing due diligence and negotiations with potential acquirers of Snap-tite, the company through its Officers and Controlling Shareholders engaged the services of various professionals to assist Snap-tite.  These professionals, whose services complemented those of Mr. Martin, charged rates of approximately $800.00 per hour.

33.     Mr. Martin is entitled to payment of an amount reasonable for the nature and quality of the work he performed for the defendants, which work was essential to the completion of the sale of the capital stock of Snap-tite.

34.     Mr. Martin is also entitled to payment of an amount of compensation based upon the increase in share value of Snap-tite as a direct result of Mr. Martin's services.

35.     Mr. Martin has requested compensation from the defendants for services provided from December, 2008 through April, 2012, but Snap-tite has failed or refused to make payment.

## F.  Causes of Action

## Count I - Breach of Contract

36.     Plaintiff Martin incorporates Paragraphs 1 through 35 herein by reference.

37.     Snap-tite sought the above-described services from Mr. Martin, including but not limited to those set forth at Paragraph 29 and its subparagraphs, in return for which Snap-tite understood that it would be obligated to pay Mr. Martin a commercially reasonable fee for his services in an amount determined by him in his professional judgment.

38.     Mr. Martin performed the requested services in exemplary fashion, and has requested payment in accordance with the agreement.

39.     Snap-tite has failed and/or refused to pay Mr. Martin the fees he is due, said fees being in the commercially reasonable amount of $1,640,000.

40.     Defendants John Clark, Rick Clark and Gary Clark have agreed to be individually responsible for Snap-tite's liability for the claims made herein.  See Exhibit A.


WHEREFORE, plaintiff Harry D. Martin requests judgment in his favor and against each defendant, in the amount of $1,640,000, plus legal interest and costs of court.


## Count II - Breach of Contract Implied-in-Fact

41.     Plaintiff Martin incorporates Paragraphs 1 through 40 herein by reference.

42.     As an alternative statement of his claim, the defendants are liable to Mr. Martin for breach of contract implied-in-fact.

43.     By its course of conduct Snap-tite sought the above-described services from Mr. Martin, including but not limited to those set forth at Paragraph 29 and its subparagraphs, expected him to perform those services, and agreed to compensate him at a commercially reasonable rate.

44.     Mr. Martin performed the requested services in exemplary fashion, and is due payment in accordance with the agreement.

45.     Snap-tite has failed and/or refused to pay Mr. Martin the fees he is due, said fees being in the commercially reasonable amount of $1,640,000.

46.     The amount claimed by Mr. Martin is reasonable under the circumstances, given the quality, quantity and nature of the services, Mr. Martin's significant experience and expertise, and the benefit Snap-tite derived from Mr. Martin's services.

47.     Defendants John Clark, Rick Clark and Gary Clark have agreed to be individually responsible for Snap-tite's liability for the claims made herein.  See Exhibit A.

WHEREFORE, plaintiff Harry D. Martin requests judgment in his favor and against each defendant in the amount of $1,640,000, plus legal interest and costs of court.

## Count III - Unjust Enrichment

48.     Plaintiff Martin incorporates Paragraphs 1 through 47 herein by reference.

49.     As an alternative statement of his claim, the defendants are liable to Mr. Martin under the theory of unjust enrichment, with damages measured by the value of services rendered by Mr. Martin.

50.     Mr. Martin's services, including but not limited to those set forth at Paragraph 29 and its subparagraphs, conferred a significant benefit, financial and otherwise, upon Snap-tite and its Controlling Shareholders.

51.     Snap-tite and its Controlling Shareholders have received and accepted that benefit from Mr. Martin's services.

52.     Snap-tite has failed to adequately compensate Mr. Martin for his significant and valuable services, and thus it received the benefit of his work without due payment.

53.     It is manifestly inequitable and unjust for Snap-tite to accept and retain the benefit derived from Mr. Martin's work without fair and due compensation.

54.     Snap-tite has failed and/or refused to pay Mr. Martin the fees he is due, said fees being in the commercially reasonable amount of $1,640,000.

55.     The amount claimed by Mr. Martin is reasonable under the circumstances, given the quality, quantity and nature of the services, Mr. Martin's significant experience and expertise, and the tremendous benefit Snap-tite derived from Mr. Martin's services.

56.     Defendants John Clark, Rick Clark and Gary Clark have agreed to be individually responsible for Snap-tite's liability for the claims made herein.  See Exhibit A.

WHEREFORE, plaintiff Harry D. Martin requests judgment in his favor and against each defendant in the amount of $1,640,000, plus legal interest and costs of court.


**Count IV - Unjust Enrichment**


57.     Plaintiff Martin incorporates Paragraphs 1 through 56 herein by reference.

58.    In addition to the claims stated above, under the theory of unjust enrichment Mr. Martin is also entitled to damages based on the increase in value of Snap-tite's stock.

59.    Mr. Martin's work and advice resulted in a substantial increase in the value of the shares of Snap-tite's capital stock.

60.    In addition to the services listed above, including but not limited to those set forth at Paragraph 29 and its subparagraphs, the following are additional examples of Mr. Martin's work and advice that served to increase the value of Snap-tite's capital stock:

      a.    Mr. Martin was instrumental in Snap-tite's purchase of the assets of Autoclave Engineers, Inc. ("Autoclave"). The acquisition would not have occurred but for the financial advice and acquisition strategies Mr. Martin provided Snap-tite. The product lines acquired by Snap-tite with its purchase of Autoclave were key assets, greatly valued by potential buyers of Snap-tite, including the eventual buyer, Parker Hannifin; and

      b.    Mr. Martin's analysis and advice enabled Snap-tite to reduce the number of its outstanding shares, increasing the amounts realized by Controlling Shareholders.

61.    Mr. Martin was never adequately compensated for these services inasmuch as the benefit did not accrue until the value of the shares was realized through the sale to Parker.

62.    Mr. Martin's services conferred a significant benefit, financial and otherwise, upon Snap-tite and its controlling shareholders.

63.    Snap-tite and its Controlling Shareholders have received and accepted that benefit from Mr. Martin's services.

64.    Snap-tite has failed to adequately compensate Mr. Martin for his significant and valuable services, and thus it received the benefit of his work without due payment.

65.    It is manifestly inequitable and unjust for Snap-tite to accept and retain the benefit derived from Mr. Martin's work without fair and due compensation.

66.     The damages to which Mr. Martin is entitled due to his work and advice resulting in increased shareholder value is not less than $4,000,000.

67.     The amount claimed by Mr. Martin is reasonable under the circumstances, given the quality, quantity and nature of the services, Mr. Martin's significant experience and expertise, and the tremendous benefit Snap-tite derived from Mr. Martin's services.

68.     Defendants John Clark, Rick Clark and Gary Clark have agreed to be individually responsible for Snap-tite's liability for the claims made herein.  See Exhibit A.

WHEREFORE, plaintiff Harry D. Martin requests judgment in his favor and against each defendant in the amount of at least $4,000,000, plus interest and costs of suit.

**PLAINTIFF DEMANDS A JURY TRIAL FOR ALL ISSUES.**

Respectfully submitted,

W. Patrick Delaney
PA Bar 23956
Craig Murphey
PA Bar 53324
MacDONALD, ILLIG, JONES & BRITTON LLP
100 State Street, Suite 700
Erie, Pennsylvania 16507-1459
(814) 870-7600
FAX (814) 454-4647
cmurphey@mijb.com

Attorneys for Plaintiff
    Harry D. Martin

1302562